1

2

3

4

5

6

7                                    UNITED STATES DISTRICT COURT

8                                    NORTHERN DISTRICT OF CALIFORNIA

9

10

11   JEROME FOSSELMAN,                                No. C 09-1766 WHA (PR)

12              Petitioner,                           **ORDER DENYING PETITION FOR
                                                      WRIT OF HABEAS CORPUS**
13       v.

14   M. S. EVANS, Warden,

15              Respondent.
                                              /
16

17                                          **INTRODUCTION**

18           This is a federal habeas corpus action filed pursuant to 28 U.S.C. 2254 by a *pro se*

19   state prisoner.  For the reasons set forth below, the petition is **DENIED**.

20                                          **BACKGROUND**

21           In 2005, a Santa Clara County Superior Court jury convicted petitioner of second-

22   degree robbery and carrying a concealed dirk or dagger.  The jury also found true an

23   allegation that petitioner had used a deadly weapon in the commission of the crimes.

24   Consequent to the verdicts, and a bench trial on petitioner's prior convictions, the trial court

25   sentenced petitioner to 36 years-to-life in state prison.[1]  Petitioner filed the instant federal

26   habeas petition after he was denied relief on direct and collateral state review.

27

28   _____

[1]  The Honorable Rodney J. Stafford served as trial judge.

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

1    Evidence presented at trial demonstrated that in August 2004, petitioner took items

2   from a grocery store without paying for them, and swung a knife he pulled from his pocket at

3   three store employees, including security guard Alejandro Madrazo, who had asked him to

4   return the items (Ans., Exh. 6 at 2–3).

5    As grounds for federal habeas relief, petitioner claims that:  (1) the trial court

6   violated his right to due process when it instructed the jury with CALJIC No. 12.41;

7   (2) defense counsel rendered ineffective assistance; and (3) appellate counsel rendered

8   ineffective assistance.

9                                **STANDARD OF REVIEW**

10    A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf

11   of a person in custody pursuant to the judgment of a State court only on the ground that he

12   is in custody in violation of the Constitution or laws or treaties of the United States."  28

13   U.S.C. 2254(a).  The court may not grant a petition with respect to any claim that was

14   adjudicated on the merits in state court unless the state court's adjudication of the claim

15   "resulted in a decision that was contrary to, or involved an unreasonable application of,

16   clearly established Federal law, as determined by the Supreme Court of the United States"

17   28 U.S.C. 2254(d)(1).

18    "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

19   court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

20   of law or if the state court decides a case differently than [the Supreme] Court has on a set

21   of materially indistinguishable facts."  *Williams v. (Terry) Taylor*, 529 U.S. 362, 412–13

22   (2000).  "Under the 'unreasonable application clause,' a federal habeas court may grant the

23   writ if the state court identifies the correct governing legal principle from [the Supreme]

24   Court's decisions but unreasonably applies that principle to the facts of the prisoner's

25   case."  *Id*. at 413.

26    A federal habeas court may also grant the writ if it concludes that the state court's

27   adjudication of the claim "resulted in a decision that was based on an unreasonable

28   determination of the facts in light of the evidence presented in the State court proceeding."

**United States District Court**
For the Northern District of California

1  28 U.S.C. 2254 (d)(2).  The court must presume as correct any determination of a factual

2  issue made by a state court unless the petitioner rebuts the presumption of correctness by

3  clear and convincing evidence.  28 U.S.C. 2254(e)(1).

4  The state court decision to which section 2254(d) applies is the "last reasoned

5  decision" of the state court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker*

6  *v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005).  When there is no reasoned opinion

7  from the highest state court to consider the petitioner's claims, the court looks to the last

8  reasoned opinion.  *See Nunnemaker* at 801–06; *Shackleford v. Hubbard*, 234 F.3d 1072,

9  1079, n. 2 (9th Cir. 2000).  Where the state court gives no reasoned explanation of its

10  decision on a petitioner's federal claim and there is no reasoned lower court decision on the

11  claim, a review of the record is the only means of deciding whether the state court's decision

12  was objectively reasonable.  *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

13  When confronted with such a decision, a federal court should conduct "an

14  independent review of the record" to determine whether the state court's decision was an

15  unreasonable application of clearly established federal law.  *Ibid*.

16  If constitutional error is found, habeas relief is warranted only if the error had a

17  "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Penry v.*

18  *Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638

19  (1993)).

20  **DISCUSSION**

21  **1.    CALJIC No. 12.41**

22  Petitioner claims that the trial court violated his right to due process when it

23  instructed the jury with CALJIC No. 12.41 ("Carrying a Concealed Dagger or Explosive

24  Substance — Weapon Defined"), which, as read to petitioner's jury, is as follows:

25  Every person who carries concealed upon his person any dirk or dagger is
guilty of a violation of Penal Code section 12020, subdivision (a)(4), a crime.
26  [ ].  The words "dirk" and "dagger" are used synonymously, and both mean a
knife or other instrument with or without a hand guard that is capable of ready
27  use as a stabbing weapon that may inflict great bodily injury or death.

28  The mental state with which a knife or other instrument is carried may be

3

1   inferred from the evidence, including the attendant circumstances, the time,
2   place, destination of the possessor, and any other relevant facts established by
    the evidence.

3   In order to prove this crime, each of the following elements must be proved:

4   One, a person carried a dirk or dagger; two, the weapon was substantially
    concealed upon his person; and, three, that person knowingly and intentionally
5   carried a knife or other device capable of ready use as a stabbing weapon that
    might inflict great bodily injury or death.

6
    A knife carried in a sheath which is worn openly suspended from the waist of
7   the wearer is not a concealed weapon.

8   (Ans., Exh. 2, Vol. 3 at 235–36).  Petitioner contends that the use of "substantially," rather

9   than "completely" to modify "concealed" violates due process (Pet., Attachment D at 4).

10  More specifically, petitioner contends that CALJIC No. 12.41 misstates the statute,[2] which

11  requires "concealment," which petitioner interprets to mean complete concealment (*ibid.*).

12      Witnesses at the grocery store observed petitioner search in his pockets and pull a

13  steak knife out of his pocket.  "Before [petitioner] removed the knife from his pocket, the

14  knife was entirely concealed in his pocket, and Madrazo [a store security guard], could not

15  see any part of the knife" (Ans., Exh. 6 at 3).

16      Petitioner, who testified at trial, gave a different account of events:

17  [Petitioner] claimed that he "didn't even know I had the knife actually."  The
    knife was tucked into his belt at his waistband so that the upper half of the
18  handle of the knife was visible above his waist and the lower half of the
    handle and the blade were covered by his belt.  "It was where you can't tell it
19  because it blends in with the belt."  When he "remembered I had the knife," he
    turned around, "pulled the knife out" and twice displayed it to the three [store
20  employees].  [Petitioner] denied that any of these men spoke to him.
    [Petitioner] testified that the men stopped about 20 feet away and came no
21  closer.  [Petitioner] denied having slashed or swung the knife at anyone.

22  (*id.* at 4–5).  Defense counsel, however, conceded in his closing argument that petitioner

23  was guilty of carrying a concealed dirk or dagger (*id.* at 6).  The fact of this concession was

24  repeated by the prosecutor: "Counsel admitted the — the weapon charge so I don't — I

25  don't need to talk about that.  Skip all that" (*ibid.*).

26

27      [2] "Any person in this state who does any of the following is punishable by imprisonment
    in a county jail not exceeding one year or in the state prison: . . . [c]arries concealed upon his or
28  her person any dirk or dagger."  Cal. Pen. Code § 12020(a)(4).

4

**United States District Court**
For the Northern District of California

1    The state appellate court rejected petitioner's claim that his due process rights were

2 violated.  First, according to the state appellate court, the statute requires only

3 "concealment," not "absolute" or "complete" concealment.  Second, two witnesses testified

4 that the knife was concealed until petitioner removed it from his pocket.  Third, petitioner

5 testified that the knife "was where you can't tell it because it blends in with the belt."

6 Fourth, defense counsel conceded that petitioner was guilty of the charge (*id.* at 8).

7    To obtain federal collateral relief for errors in the jury charge, a petitioner must show

8 that the ailing instruction by itself so infected the entire trial that the resulting conviction

9 violates due process.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  The

10 instruction may not be judged in artificial isolation, but must be considered in the context of

11 the instructions as a whole and the trial record.  *Ibid.*  In other words, the court must

12 evaluate jury instructions in the context of the overall charge to the jury as a component of

13 the entire trial process.  *United States v. Frady*, 456 U.S. 152, 169 (1982).

14    Petitioner's claim is without merit.  First, his assertion that the instruction is not a

15 correct statement of the law is flatly contradicted by the state appellate court.  This order is

16 bound by a state's interpretation of its state's laws.  *Bradshaw v. Richey*, 546 U.S. 74, 76

17 (2005).  Second, there was testimonial evidence, including that of petitioner, cited above, to

18 support an inference that the knife was completely concealed.  Third, petitioner, via defense

19 counsel, conceded that he was guilty of the charge.  By so conceding, petitioner waived his

20 constitutional rights as to this claim.  Accordingly, petitioner's claim is DENIED because he

21 has failed to show that there was "no reasonable basis for the state court to deny relief,"

22 *Richter*, 131 S. Ct. at 784, that is, he has not shown that the state court's decision was

23 contrary to, or involved an unreasonable application of, clearly established Supreme Court

24 precedent.

25    **2.    Assistance of Defense Counsel**

26    Petitioner claims that defense counsel rendered ineffective assistance by failing to

27 investigate and present at trial an alleged inconsistency in eyewitness Madrazo's versions of

28 events (Pet., Attachment D at 8).  According to a police report, Madrazo, a store security

1  guard, told police that petitioner "pulled a knife from his waistband" (*id.*, Attachment 1,

2  Exh. A at 1).  At the preliminary hearing and at trial, Madrazo testified that petitioner pulled

3  a knife out of his pocket (Ans., Exh. 1, Vol. 1 at 17; Exh. 2, Vol. 2 at 104).  The state

4  appellate court did not rule on this claim in its written opinion.

5       Claims of ineffective assistance of counsel are examined under *Strickland v.*

6  *Washington*, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of

7  counsel, the petitioner must establish two factors.  First, he must establish that counsel's

8  performance was deficient, i.e., that it fell below an "objective standard of reasonableness"

9  under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best

10 practices or most common custom," *Richter*, 131 U.S. at 788 (citing *Strickland*, 466 U.S. at

11 650).  "A court considering a claim of ineffective assistance must apply a "strong

12 presumption" that counsel's representation was within the "wide range" of reasonable

13 professional assistance." *Richter*, 131 U.S. at 787 (quoting *Strickland*, 466 U.S. at 689).

14 Second, he must establish that he was prejudiced by counsel's deficient performance, i.e.,

15 that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

16 of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A reasonable

17 probability is a probability sufficient to undermine confidence in the outcome.  *Ibid.*  Where

18 the defendant is challenging his conviction, the appropriate question is "whether there is a

19 reasonable probability that, absent the errors, the factfinder would have had a reasonable

20 doubt respecting guilt." *Id.* at 695.

21      A reviewing federal habeas court must accord tactical decisions by trial counsel

22 considerable deference.  "[C]ourts may not indulge 'post hoc rationalizations' for counsel's

23 decision-making that contradicts the available evidence of counsel's actions . . . neither may

24 they insist counsel confirm every aspect of the strategic basis for his or her actions.  There is

25 a 'strong presumption' that counsel's attention to certain issues to the exclusion of others

26 reflects trial tactics rather than 'sheer neglect.'" *Richter*, 131 S.Ct. at 790 (citations

27 omitted).  Tactical decisions of trial counsel deserve deference when: (1) counsel in fact

28 bases trial conduct on strategic considerations; (2) counsel makes an informed decision

United States District Court
For the Northern District of California

1   based upon investigation; and (3) the decision appears reasonable under the circumstances.

2   *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

3          Petitioner has not shown ineffective assistance under *Strickland*. As to the inquiry's

4   first prong, petitioner has not shown that defense counsel's performance was deficient.

5   Defense counsel chose not to question Madrazo about this rather minor inconsistency, but

6   rather made the tactical decision to concede to the charge. Such a tactical decision was

7   reasonable under the circumstances, considering that several eyewitnesses testified to seeing

8   petitioner pull a knife, and that petitioner admitted to that act. For similar reasons, petitioner

9   has not shown prejudice under the inquiry's second prong. Considering the weight of the

10  evidence against petitioner, which includes his own admissions, petitioner has not shown

11  that counsel's interrogation of Madrazo on the minor discrepancy raises a reasonable

12  probability that but for defense counsel's performance the outcome of the proceeding would

13  be different.[3] Accordingly, petitioner's claim is DENIED because he has failed to show that

14  there was "no reasonable basis for the state court to deny relief," *Richter*, 131 S. Ct. at 784,

15  that is, he has not shown that the state court's decision was contrary to, or involved an

16  unreasonable application of, clearly established Supreme Court precedent.

17  **3.      Effectiveness of Appellate Counsel**

18         Petitioner claims that appellate counsel rendered ineffective assistance in the

19  following ways: (1) defense counsel rendered ineffective assistance for conceding that

20  petitioner was guilty of the concealed weapon offense; (2) there was insufficient evidence to

21  support the robbery conviction; (3) the trial court's instruction misstated the "immediate

22  presence" element of robbery; and (4) there was insufficient evidence that he had suffered a

23  prior strike in 1980 (Pet., Attachment D at 18ff). The state habeas court rejected all these

24  claims, concluding that petitioner "fails to show that the arguments he wanted counsel to

25  make were meritorious" (Ans., Exh. 14 at 2).

26

27         [3] According to petitioner, a second inconsistency occurred when Madrazo testified at the preliminary hearing that he saw the wooden handle of the knife, while at trial he testified that

28  he saw only part of the blade (Pet, Attachment D at 11). This claim is without merit because it is based on a misapprehension of the record. Madrazo testified at trial that he initially saw part of the blade when petitioner first removed the knife from his pocket, and he testified that he later saw the entire knife (Ans., Exh. 104–07).

United States District Court

For the Northern District of California

1     Claims of ineffective assistance of appellate counsel are reviewed according to the

2 standard set out in *Strickland*, cited above.   *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir.

3 1989).  A defendant therefore must show that counsel's advice fell below an objective

4 standard of reasonableness and that there is a reasonable probability that, but for counsel's

5 unprofessional errors, he would have prevailed on appeal.  *See id.* at 1434 n.9 (citing

6 S*trickland*, 466 U.S. at 688, 694).

7     It is important to note that appellate counsel does not have a constitutional duty to

8 raise every nonfrivolous issue requested by defendant.  *See Jones v. Barnes*, 463 U.S. 745,

9 751–54 (1983).  The weeding out of weaker issues is widely recognized as one of the

10 hallmarks of effective appellate advocacy.  *See Miller*, 882 F.2d at 1434.  Appellate counsel

11 therefore will frequently remain above an objective standard of competence and have caused

12 his client no prejudice for the same reason — because he declined to raise a weak issue.

13 *Ibid.*  "There can hardly be any question about the importance of having the appellate

14 advocate examine the record with a view to selecting the most promising issues for review.

15 This has assumed a greater importance in an era when oral argument is strictly limited in

16 most courts — often to as little as 15 minutes — and when page limits on briefs are widely

17 imposed."  *Barnes*, 463 U.S. at 752–53.

18     Petitioner has not shown that he is entitled to habeas relief on these claims.  As to (1),

19 he has not shown that he suffered prejudice.  As noted above, defense counsel's decision to

20 concede petitioner's guilt as to the concealed weapon charge was a reasonable tactical

21 decision under the circumstances.  Petitioner's own admissions and the testimony of several

22 eyewitnesses made his conviction on this charge almost certain.  With that in mind, perhaps

23 defense counsel chose this plan to focus the jury's attention on the issues which were more

24 open to a defense challenge.  On such a record, defense counsel's decision did not deny

25 petitioner his Sixth Amendment right to counsel.  As this underlying claim is without merit,

26 appellate counsel cannot have rendered ineffective assistance by not raising it on appeal.

27     Petitioner contends in Claim (2) that the evidence was insufficient to support his

28 robbery conviction.  He asserts that because Madrazo was no where near him when he left

**United States District Court**
For the Northern District of California

1   the store with the merchandise, he could not have taken the property from Madrazo's

2   immediate presence, an element of robbery.[4]  This underlying claim is without merit.  By

3   resisting Madrazo's efforts to regain the stolen items, petitioner's acts were sufficient to

4   satisfy the immediate presence element of robbery.  *People v. Estes*, 147 Cal. App. 3d 23, 27

5   (1983).  As this underlying claim is without merit, appellate counsel cannot have rendered

6   ineffective assistance by not raising it on appeal.

7          Petitioner contends in Claim (3) that the trial court misstated the law of "immediate

8   presence" by instructing the jury on the very point of law from *Estes*, quoted above.  As this

9   was a correct statement of the law coming from a California appellate court, the underlying

10  claim is without merit.  As this underlying claim is without merit, appellate counsel cannot

11  have rendered ineffective assistance by not raising it on appeal.

12         Claim (4) is without merit.  Whether a prior conviction qualifies as a strike is a

13  question of state sentencing law.  *See Miller v. Vasquez*, 868 F.2d 1116, 1118–19 (9th Cir.

14  1989).  The state trial and appellate courts found that petitioner's prior conviction qualified

15  as a strike[5] (Ans., Exh. 6 at 1, 9–13).  A state court's interpretation of state law binds a

16  federal court sitting in habeas corpus.  *Richey*, 546 U.S. at 76.  Accordingly, this order is

17  bound to view the prior conviction as a strike.  As the underlying claim is without merit,

18  appellate counsel cannot have rendered ineffective assistance by not raising it on appeal.

19         Petitioner also claims that his 1980 conviction was unconstitutional, and therefore

20  cannot be used as the basis for enhancing his sentence (Pet., Attachment E at 52).  This

21  claim is without merit.  Generally speaking, a federal habeas petitioner cannot challenge the

22  validity of a prior conviction used as a sentencing enhancement if that prior conviction is no

23

24

25

26  [4] "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Pen. Code § 211.

27

28  [5] The state habeas court also rejected petitioner's claim:  "Even assuming it was not a strike, [p]etitioner fails to show prejudice where the record reflects that petitioner was found to have suffered a total of four prior serious felony convictions.  Petitioner's sentence would remain the same regardless of the 1980 prior" (Ans., Exh. 14 at 2).

**United States District Court**
For the Northern District of California

1 longer open to direct or collateral attack.[6] *Lackawanna County v. Coss*, 532 U.S. 394, 402

2 (2001).  Petitioner makes no arguments about the question of direct attack, so the order will

3 move to the question of collateral attack.  State collateral remedies are unavailable to

4 petitioner because the state supreme court rejected his habeas petition based on his 1980

5 conviction as untimely (Ans., Exh. 12).  This order is bound by the state court's

6 determination based on its own laws.  *Richey*, 546 U.S. at 76.  As for federal collateral

7 review, a prisoner with a state conviction finalized before April 24, 1996, such as

8 petitioner's 1980 conviction, had until April 24, 1997, to file a federal habeas petition on

9 time.  *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001).  Petitioner's challenge to

10 his 1980 conviction by way of the instant 2009 petition is therefore foreclosed, unless some

11 exception applies.

12     Petitioner contends that his case is exceptional because he did not know until 2005

13 that he could pursue state habeas remedies.  Petitioner's claim would fail even if an

14 ignorance of the law would excuse the filing date requirement.  Federal habeas petitions

15 must be filed within one year of the latest of the date on which:  (1) the judgment became

16 final after the conclusion of direct review or the time passed for seeking direct review;

17 (2) an impediment to filing an application created by unconstitutional state action was

18 removed, if such action prevented petitioner from filing; (3) the constitutional right asserted

19 was recognized by the Supreme Court, if the right was newly recognized by the Supreme

20 Court and made retroactive to cases on collateral review; or (4) the factual predicate of the

21 claim could have been discovered through the exercise of due diligence.  *See* 28 U.S.C.

22 2244(d)(1).  This one-year filing deadline is tolled for the time during which a petitioner is

23 pursuing state habeas remedies, but not for the time between filings.  28 U.S.C. 2244(d)(2).

24 Tolling is not available if a state court clearly rules that the petition for relief was untimely.

25 *Carey v. Saffold*, 536 U.S. 214, 226 (2002).  Petitioner filed, on August 22, 2005 in the state

26 superior court, his first state habeas petition challenging his prior convictions, a petition

27

28     [6] There are some exceptions to this rule, none of which is applicable here: (1) there was a failure to appoint counsel in the prior conviction proceedings, (2) interference with petitioner's pursuing judicial remedies, and (3) petitioner has shown evidence of actual innocence. *Coss*, 532 U.S. at 405.

10

**United States District Court**
For the Northern District of California

1  which was denied on August 26.  Petitioner filed his next habeas petition on September 20,

2  2005, which was denied by the state appellate court on October 6.  More than a year later,

3  on November 17, 2006, petitioner filed his next habeas petition, which was denied by the

4  state supreme court on May 16, 2007.  The one-year gap between the October 6, 2006 state

5  court decision and the November 17, 2006 filing of his next habeas petition is fatal to

6  petitioner's claim.  Because the statute was not tolled during that year, petitioner's federal

7  habeas petition is not timely filed.  Furthermore, as noted above, the state supreme court

8  ruled that his petition was untimely, and therefore petitioner is not entitled to tolling for

9  federal habeas purposes. Because the 1980 conviction is no longer open to direct or

10  collateral attack, petitioner's claim of ineffective assistance of appellate counsel must be

11  denied.  Accordingly, petitioner's claims are DENIED because he has failed to show that

12  there was "no reasonable basis for the state court to deny relief," *Richter*, 131 S. Ct. at 784,

13  that is, he has not shown that the state court's decision was contrary to, or involved an

14  unreasonable application of, clearly established Supreme Court precedent.

16  **CONCLUSION**

17  The state court's adjudication of petitioner's claims did not result in a decision that

18  was contrary to, or involved an unreasonable application of, clearly established federal law.

19  Nor was the decision based on an unreasonable determination of the facts in light of the

20  evidence presented in the state court proceeding.  Accordingly, the petition is **DENIED**.

21  A certificate of appealability will not issue.  Reasonable jurists would not "find the

22  district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

23  *McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from

24  the Court of Appeals.

25  The Clerk shall enter judgment in favor of respondent and close the file.

26  **IT IS SO ORDERED.**

27  Dated: June 23 2011

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11